YAGER v WRIGHT

Docket No. 70624. Submitted May 2, 1984, at Grand Rapids.—Decided June 28, 1984.

Randall L. and Noelle C. Yager brought an action seeking an injunction against Timothy and Belinda Wright, Mark Hammersma, W. Terry Hunefeld, doing business as East Meadow Development, and Cascade Acres, Inc. The Yagers sought to have a residential dwelling being constructed adjacent to their property demolished or reconstructed, claiming that the dwelling, which was partially enclosed by earth berms, violated both the property owners restrictions and the township zoning ordinance. Cascade Township was made a third-party defendant. The central issue was whether the Wright's home is a "basement" home or "walk-out" home as defined in the property restrictions or the ordinance. The Kent Circuit Court, Stuart Hoffius, J., held that the home was not in violation and granted a judgment of no cause of action in favor of the defendants. Plaintiffs appealed, and Michigan National Bank-Central, which held a mortgage on the property, intervened as an appellee. *Held:*

1. Review of this equity case is *de novo,* with due deference given to the trial court's findings of fact. The home is not a "basement" home as it is not below the main floor, rather the main floor is the lowest level. The home is also not a "walk-out" home as defined in the building restrictions.

2. The township zoning ordinance should not be interpreted to mean that, by the use of the berms, a basement is created.

Affirmed.

APPEAL — EQUITY — *DE NOVO* REVIEW.

Equity cases are reviewed by the Court of Appeals *de novo.*

H. James Telman, for plaintiffs.

REFERENCE FOR POINTS IN HEADNOTE

5 Am Jur 2d, Appeal and Error §§ 703, 822.

*Warner, Norcross & Judd* (by *Patrick E. Mears* and *H. Terrence Smith),* for Cascade Acres, Inc.

*Victoria Helton,* for Michigan National Bank-Central.

Before: BEASLEY, P.J., and ALLEN and M. B. BREIGHNER,* JJ.

BEASLEY, P.J. Plaintiffs, Randall L. and Noelle C. Yager, appeal as of right from a judgment of no cause of action awarded defendants after a bench trial.

Plaintiffs, owners of a residential home in Cascade Acres No. 6, a residential subdivision in Cascade Township, Kent County, sought an injunction to compel defendants to demolish or reconstruct a residential dwelling that was being constructed on an adjacent lot in the same subdivision, claiming violations of the zoning ordinance and the property owners restrictions.[1] Defendants' plans were approved by an officer of the subdivision association, and a building permit was issued by the township building inspector. After a three-day trial and a visit to the premises, the trial judge denied plaintiffs' request for a permanent injunction.

Since plaintiffs sought injunctive relief which is equitable in nature, our appellate review is *de novo,* with appropriate deference given to the trial court's findings of fact.[2] We also note that the trial judge visited the premises and accord his findings

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] In this case, defendants contracted for a house to cost $110,500.

[2] *Marconeri v Village of Mancelona,* 124 Mich App 286; 335 NW2d 21 (1983); *Ed Zaagman, Inc v City of Kentwood,* 406 Mich 137; 277 NW2d 475 (1979).

special weight insofar as they rest upon those observations.[3]

Plaintiffs claimed that defendants violated the minimum square footage requirements of both the property owners restrictions (1500 square feet for a single story and 1750 square feet for a two-story dwelling) and the zoning ordinance (1600 square feet). The gist of plaintiffs' claim is that in the so-called passive solar, earth-bermed structure planned by defendants, over 1000 square feet of the main living area of the home is a "basement" or "walk-out", the square footage of which cannot be counted toward the minimum under either the property owners restrictions or the zoning ordinance. This assertion rested upon the part of the restriction agreement that provides:

"c) Furnished basement areas and/or 'walk-out' levels shall be in addition to the minimum square footage requirements of ¶¶ a) and b) above."

Two "berms" of earth were pushed against the main level of the structure to insulate it and to reduce energy costs. In general, defendants sought to more or less conform the grade of the main level to the surrounding terrain.

While there were conflicts in the testimony, the president of the developer-owner of the subdivision and drafter of the restrictions testified:

"*Q.* Now, within the meaning of ¶ 2(c), what is a basement?

"*A.* A basement is a full story area below the main level of a home either partially or completely below the original grade of the surrounding earth.

---

[3] *Emerald Valley Land Development Co v Diefenthaler*, 35 Mich App 346; 192 NW2d 673 (1971), *lv den* 386 Mich 770 (1971); *Kustarz v Janesick*, 347 Mich 223; 79 NW2d 613 (1956).

"*Q.* And within the meaning of ¶ 2(c) of the plat restrictions, what is a walk-out?

"*A.* A walk-out is a basement level with a penetration through the foundation wall opening up onto the surrounding grade. * * *

"*Q.* [I]s the main level a basement or a walk-out?

"*A.* No.

"*Q.* Why isn't it?

"*A.* It is not a basement because it is above the level of the existing grade. It does not have a full story above it. This is a tri-level or one and a half story home with a slab on grade. It is not a walk-out, number one, because it is not a basement. Number two, it is not dug into the side of a hill and to me this was the lower level of the story and a half or tri-level home. It was built at the existing grade and within the plat restrictions, and the requirements of the plat restrictions, it meets them. * * *

"The lower level is built at the existing grade. The only difference between that home and what we will quote call a conventional home is that the Wrights have elected to berm earth against the exterior of the lower level for insulation purposes. I might say they have elected to berm earth on basically the two sides because the third side of a tri-level is going to be automatically below grade anyway, so they have elected to berm the earth on basically two sides of the lower level and that is the only difference."

In holding with defendants, the trial judge said:

"I am of the opinion that the dwelling here involved does not violate the restrictions here involved. It is true that a portion of the living room, the living area is below grade. It is also true that there are two berms on either side, but I am of the opinion that this does not make it a basement nor does the mere fact that there are sliding doors from, I think, both the living room and the dining area onto what is eventually going to be a terrace is sufficient to make it what is known as a 'walk-out' so that it would be considered, as such, in violation of the restrictions."

The trial judge also said:

"There has been much testimony relative to the definitions of many of the things here involved. The first question is, what is a basement? And I have had many definitions given to me. We all have our own thoughts of what a basement is. BOCA has one, BOCA has another definition of a cellar which is different than a basement, but in one respect a basement can be a cellar. There are many definitions in various dictionaries. There are also many definitions of a basement that we all have in our own minds of what is a basement. There apparently is no standard definition of walk-out. When you look in the dictionary, I understand you don't find it when you try to find something that is used as a walk-out. Each of the people here involved have given their own definitions and I won't try to define it, but it is an opening onto a ground level from an established lowest level construction which has earth around it to more than one-half of its height."

We see no reason to interfere with the trial judge's opinion.

There are various definitions of a basement. One dictionary definition of basement is:[4]

"2. the lowest story of a building, below the main floor and wholly or partly below the surface of the ground."

As indicated by appellees, the key element of this definition is that a basement is an area below the main floor. The "lower level" of defendants' home is the main floor containing the living room, dining room, kitchen, bath, and bedroom-den. It is not a basement because it is not below the main floor. We agree with a witness who described it as a one-and-a-half story slab home without a basement.

[4] Webster's New World Dictionary (William Collins & World Publications Co., Inc., 1974), p 116.

The term "walk-out" is less readily susceptible of accepted dictionary definition.[5] As previously quoted, the drafter of the restrictions defined a "walk-out" and testified unequivocally that defendant's construction was not a "walk-out". Thus, we are satisfied that there was ample evidence in support of the trial judge's conclusion that the disputed living area was neither a basement nor a walk-out.

Neither do we believe that the trial court erred in holding that the proposed residence did not violate the zoning ordinance. the court stated:

"There is also evidence that a strict interpretation of the zoning law might be involved here. I am of the opinion that if just because you put the berms on both sides of the house and because it may be a foot or two feet, or even up to three feet, lower than the existing grade does not make it a basement to violate the zoning laws of the township."

We do not interpret the zoning ordinance in question to mean that this use of "berms" creates a basement within the language of the ordinance. It may be that the township should give attention to including in its ordinance definitions more apropos and timely for the type of construction contemplated here, but in the interim, we are not inclined to strain the meaning of the ordinance by filling in missing definitions.[6]

Affirmed.

[5] Our search does not reveal a dictionary definition of "walk-out" as such.

[6] "Grade" and "basement" are not defined in the ordinance.